IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 4:22-cr-00157 |
| Plaintiff, | : | |
| vs. | : | |
| TYRONE SCOTT CAMERON, | : | DEFENDANT CAMERON'S SENTENCING MEMORANDUM |
| Defendant. | : | AND MOTION FOR VARIANCE |

COMES NOW the Defendant, TYRONE SCOTT CAMERON, by and through his CJA appointed counsel, F. Montgomery Brown, of the F.M. Brown Law Firm, P.L.L.C., and hereby submits the following Sentencing Memorandum and Motion for Variance.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. 1

TABLE OF AUTHORITIES ........................................................................................... 2

OFFENSE CONDUCT ..................................................................................................... 3

PSR OFFENSE LEVEL COMPUTATION .................................................................... 3

OUTSTANDING OBJECTIONS .................................................................................... 4

SENTENCING FACTORS .............................................................................................. 5

HISTORY AND CHARACTERISTICS OF THE DEFENDANT ............................... 9

ARGUMENT AND MOTION FOR DOWNWARD VARIANCE AND
REQUESTED SENTENCE ........................................................................................... 13

## TABLE OF AUTHORITIES

Cases:

*Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007)............7, 8
*Nelson v. United States,* 555 U.S. 350, 352, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009).......8
*Rita v. United States,* 551 U.S. 338 (2007)................................................................8
*United States v. Agboola,* 417 F.3d 860, 865 (8th Cir.2005)......................................6
*United States v. Atkins,* 250 F.3d 1203, 1213 (8th Cir.2001) ....................................6
*United States v. Booker,* 543 U.S. 220, 234, 125 S. Ct. 738, 750, 160 L. Ed. 2d 621 (2005)..........................................................................................................................7
*United States v. Erger,* 19 F.3d 24, 1994 WL 47875, *2 (8th Cir. Feb. 18, 1994)..............6
*United States v. Fetlow,* 21 F.3d 243, 248 (8th Cir.1994) .........................................6
*United States v. Granados,* 962 F.2d 767, 772 (8th Cir.1992) .................................6
*United States v. Haack,* 403 F.3d 997, 1002-1003 (8th Cir. 2005) ..........................7
*United States v. Lawrence,* 854 F.3d 462, 467 (8th Cir. 2017)...............................6
*United States v. Morin,* 437 F.3d 777, 781 (8th Cir.2006) .......................................6
*United States v. Ortiz,* 636 F.3d 389, 393 (8th Cir.2011)..........................................5
*United States v. Poor Bear,* 359 F.3d 1038, 1041 (8th Cir.2004) ............................6
*United States v. Pratt,* 553 F.3d 1165, 1170 (8th Cir.2009)..................................5, 6
*United States v. Roberson,* 517 F. 3d 990 (8th Cir. 2008).......................................8
*United States v. Robison,* 759 F.3d 947, 950-51 (8th Cir. 2014)...............................9
*United States v. Rodriguez-Ramos,* 663 F.3d 356, 364 (8th Cir. 2011)...................6
*United States v. Ruelas–Mendez,* 556 F.3d 655, 657 (8th Cir.2009)........................8
*United States v. Simmons,* 964 F.2d. 1994, 763, 776 (8th Cir. 1992)......................6
*United States v. Sorrells,* 432 F.3d 836, 838 (8th Cir.2005)......................................6

Statutes:

18 U.S.C. § 922(g)(1) ............................................................................................... 3
18 U.S.C. § 3553(a)........................................................................................7, 8, 13
18 U.S.C. § 3553(a)(1) .............................................................................................. 7
18 U.S.C. § 3553(a)(2) .............................................................................................. 7
18 U.S.C. § 3553(a)(3) .............................................................................................. 7
18 U.S.C. § 3553(a)(6).............................................................................................. 7

Other Authorities:

USSG §1B1.11...........................................................................................................3
USSG §2A1.1(a).........................................................................................................3
USSG §2K2.1 .............................................................................................................3
USSG §2K2.1(c)(1)(B)................................................................................................3
USSG §3E1.1..............................................................................................................4
USSG §4A1.1(d).........................................................................................................4
USSG Chapter 2, Part A, Subpart 1 ............................................................................3

USSG Chapter 5, Part A ................................................................................................4
USSG §6A1.3 ...............................................................................................................6

## OFFENSE CONDUCT

Defendant has objected to the Offense Conduct statement and PSR Paragraphs 8-13. He stands by his not guilty plea and maintains his innocence of the federal offense of conviction.

## PSR OFFENSE LEVEL COMPUTATION

### Offense Level Computation

The 2021 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

### Count 1: Felon in Possession of Ammunition

**Base Offense Level:** The guideline for 18 U.S.C. § 922(g)(1) offenses is found in USSG §2K2.1. That section provides that if the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, and death resulted, apply the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide) if the resulting offense level is greater. In this case, the defendant used the ammunition cited in the offense of conviction in the commission of first-degree murder (paragraphs 1, 3, 8, 9, and 12). USSG §§2K2.1(c)(1)(B), 2A1.1(a).                **43**

**Specific Offense Characteristics:** None.                **0**

**Victim Related Adjustment:** None.                **0**

**Adjustment for Role in the Offense:** None.                **0**

**Adjustment for Obstruction of Justice:** None.                **0**

**Adjusted Offense Level (Subtotal):**                **43**

**Chapter Four Enhancement:** None.                **0**

**Acceptance of Responsibility:** As of completion of the presentence investigation, the defendant has not clearly demonstrated acceptance of responsibility for the offense. USSG §3E1.1.                **0**

**Total Offense Level:**                                                                                                         <u>**43**</u>

Defendant has objected to the USSG offense calculations as he denies culpability and claims wrongful conviction.

### Criminal History Computation

The Defendant's prior criminal convictions result in a subtotal criminal history score of 26. The defendant committed the instant offense while under a criminal justice sentence for Docket Numbers SRCR347143, FECR349031, FECR348863, FECR349032; therefore, Two points are added. USSG §4A1.1(d).

The total criminal history score is 28. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 28 establishes a criminal history category of VI.

### OUTSTANDING OBJECTIONS

The Defendant, Tyrone Scott Cameron, lists the following objections as outstanding:

Defendant objects to alleged alias names "Ace J" and "Estiamba". He denies using those alias names. (PSIR. p. 2); Defendant objects to inclusion of this paragraph and subparagraphs for the reason that he was not in federal custody at the time of the alleged violations. (PSIR, ¶5);

Defendant objects to the last sentence: "Cameron told one of these witnesses, H.K., that he was going to kill J.G.". Defendant denies making this statement. (PSIR. ¶ 8); Defendant objects to the sentences beginning "He returned....through the closed door of Apartment 97." Defendant denies commission of the offense for the reasons asserted at his state murder trial and his federal trial. (PSIR., ¶9); Defendant objects to the first sentence. Defendant denies commission of the offense for the reasons asserted at his state murder trial and his federal trial. (PSIR. ¶10);  11. Defendant objects to Paragraph 11 as an inaccurate and incomplete summary of the contents of his post-Miranda interview. (PSIR.

4

¶11); Defendant objects to Paragraph 12. Defendant denies commission of the offense and possession of the cell phone at the scene of the commission for the reasons asserted at his state murder trial and his federal trial. (PSIR. ¶12): Defendant objects to the assertion that he possessed the ammunition in question for the reasons asserted at his state murder trial and his federal trial. (PSIR. ¶13); Defendant objects to the USSG BOL, AOL, TOL. (PSIR. ¶ 20-28); Defendant denies culpability and claims wrongful conviction for the reasons asserted at his state murder trial and his federal trial; Defendant objects to the underlying factual assertions relating to use or possession of a firearm (PSIR. ¶47); Defendant objects the underlying factual assertions in this unfiled case (PSIR. ¶59); Defendant objects to reference to possible membership in C-Block or being targeted by the Heavy Hitters. Defendant denies gang membership (PSIR. ¶63); Defendant objects to the USSG BOL, AOL, TOL, and advisory Guideline range. Defendant denies culpability and claims wrongful conviction for the reasons asserted at his state murder trial and his federal trial (PSIR. ¶ 123); and PART E, Paragraph 138. Defendant will assert grounds for downward variance based upon various factors including actual innocence, child sexual abuse victimization, mental health problems, substance abuse and other factors to be enunciated in Defendant's Sentencing Memorandum.

## SENTENCING FACTORS

The district court has "wide discretion at sentencing as to the kind of information considered or its source." *United States v. Pratt,* 553 F.3d 1165, 1170 (8th Cir.2009). A court may consider all relevant evidence at sentencing, regardless of its admissibility under the rules of evidence, provided that the evidence has "sufficient indicia of reliability." *United States v. Ortiz,* 636 F.3d 389, 393 (8th Cir.2011). The evidence need not be limited to evidence relating to the scope of the crimes charged and may include "uncorroborated hearsay, provided the defendant is given a chance to rebut or explain it." *United States v. Pratt,* 553 F.3d at 1170 (quoting *United*

*States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir.2001)). "[T]he sentencing process does not carry the same evidentiary protections guaranteed during a criminal trial." *Id.* (quoting *United States v. Agboola*, 417 F.3d 860, 865 (8th Cir.2005)). *United States v. Rodriguez-Ramos*, 663 F.3d 356, 364 (8th Cir. 2011).

The sentencing court cannot rely on objected-to facts contained in a PSR. *United States v. Lawrence*, 854 F.3d 462, 467 (8th Cir. 2017); *United States v. Sorrells*, 432 F.3d 836, 838 (8th Cir.2005). When as here the defendant objects to alleged facts contained in the PSR and the relevant responsive evidence has not already been produced at trial, "the government must present evidence at the sentencing hearing to prove the existence of the disputed facts." *United States v. Poor Bear*, 359 F.3d 1038, 1041 (8th Cir.2004)

"Hearsay evidence remains admissible in sentencing as long as it bears some indicia of reliability." (citing *United States v. Morin*, 437 F.3d 777, 781 (8th Cir.2006))). Evidence that has "sufficient indicia of reliability," pursuant to U.S.S.G. § 6A1.3, is "'reasonably trustworthy' in light of 'the totality of the circumstances.' " *United States v. Erger*, 19 F.3d 24, 1994 WL 47875, *2 (8th Cir. Feb. 18, 1994) (*per curiam* ) (unpublished op.) ("[E]vidence is reasonably trustworthy if it has a 'sufficient indicia of reliability.' " (quoting *United States v. Simmons*, 964 F.2d 763, 776 (8th Cir.1992))). Generally, consideration of investigative reports regarding the investigation of the defendant's criminal conduct have been permitted at sentencing, as long as "the information has *sufficient indicia of reliability to support its probable accuracy.*" *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir.1994) (citing *United States v. Granados*, 962 F.2d 767, 772 (8th Cir.1992)).

The Guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220, 234, 125 S. Ct. 738, 750, 160 L.Ed.2d 621 (2005). However, the district court must take them into consideration. *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005) (directing the court

6

to first consider the potential Guideline range, then discern whether traditional departure is appropriate under the Guidelines, then consider all the other factors set forth in 18 U.S.C. § 3553(a)).

The United States Sentencing Guidelines are but one factor for the district court to consider in determining a sentence that is sufficient but not greater than necessary. The other factors are set forth in Section 3553(a), and include:

> 1) the nature and circumstances of the offense and history and characteristics of the defendant;
> 3) the kinds of sentences available;
> 6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
> 7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1), (3), (6-7). Additionally, the Court must consider:

> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). "[T]he district court should then consider all of the § 3553(a) factors." *Id.* In the post-*Booker* sentencing regime, the district court's "reasoned sentencing judgment rest[s] upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of

factors." *Rita v. United States*, 551 U.S. 338, 358, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The sentencing court "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (citing *Id.* at 351, 127 S.Ct. 2456, 168 L.Ed.2d 203); *see also Nelson v. United States*, 555 U.S. 350, 352, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). The court "must make an individualized assessment based on the facts presented." *Id.* at 50, 128 S.Ct. 586, 168 L.Ed.2d 203. Should the court find "that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* "After setting on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (citing *Rita*, 551 U.S. at 356-58, 127 S.Ct. 2456, 168 L.Ed.2d 203).

After setting the sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* Thus, the final step in the determination of a defendant's sentence is to apply the factors in § 3553(a). *Roberson*, 517 F.3d at 993. The court has substantial latitude in determining how much weight to give each of the 3553(a) factors. *See United States v. Ruelas–Mendez*, 556 F.3d 655, 657 (8th Cir.2009). However, "[a] district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors, but commits a clear error of judgment in weighing those factors." *United States v. Robison*, 759 F.3d 947, 950-51 (8th Cir. 2014) (citations and internal quotations omitted).

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Defendant, Tyrone Scott Cameron (nee Tyrone Scott Palmer) was born to single mother Mashayla Palmer and an unidentified/unknown male on July 13, 1993 in Des Moines, Iowa. He was raised by his "often absent" mother until age 10, when it was determined that, as a drug user, she was unable and unfit to to care for him and he was ushered into the foster care system at age 10 to his then foster parents, Michael and Shawnice (nee Smith) Cameron. Michael and Shawnice Cameron adopted Tyrone at age 15, and were able to provide a more stable environment for his upbringing, and subsequently adopted 4 of Tyrone's maternal half-siblings, for whom Tyrone had previously provided "parental care".

Tyrone's biological mother, Mashayla Palmer, was a drug user and would often be absent from their home for weeks at a time. Additionally, she allowed other drug users into the home and Tyrone often was surrounded by a host of unknown people using drugs in his home. Mashayla lost her parental rights when Tyrone turned 10. It is believed that at age 44, Mashalya is living a sober and much more stable lifestyle. Mashayla's criminal conviction history includes, theft fifth, driving while barred, interference with Official Acts and possession of controlled substances. She is currently unemployed, has no known physical or mental health conditions, and is supportive of Tyrone in his present legal situation.

Michael Cameron, Tyrone's adoptive father, 47 years of age, is the pastor at Revival Center Church of God in Des Moines, Iowa. He has no known physical or mental health concerns, is not known to abuse illegal substances, and has previous criminal convictions including operating while intoxicated, possession of a controlled substances, disorderly conduct, theft, resisting arrest and a more recent charge of going armed with intent, when he pointed a loaded weapon at his daughter Charity Cameron. Michel is supportive of Tyrone, believes that Tyrone is a good and kind person

9

who has been mixed up with the wrong people, and that he helps others, and has a support base of family, church, community and would benefit from learning a trade. He does acknowledge that since he was a child, Tyrone has struggled with abandonment issues, and lack of stability, as his mother moved them around quite a bit.

Shawnice Cameron, 47, works for the Iowa Department of Public Health. She does not use illegal substances, has no known mental or physical health issues and does not have a criminal record. She is supportive of the Defendant and maintains a good relationship with him.

The Defendant has 5 half-maternal-siblings 4 adopted by the Camerons and one half-sister adopted by another Des Moines family. He has an additional 8 adoptive siblings, all between the ages of 16 and 30. Of the eight, three are teenagers and reside at home, and the remaining 5 are adults who reside in the Des Moines area metro. Of the 13 siblings, only two Tatyana, age 26, has criminal conviction history including assault, harassment and possession of marijuana – and Brandon – age 19 – is in the custody of the Iowa Department of Corrections – with known convictions for intimidation with a serious weapon, domestic abuse assault, assault, intimidation, and felon in possession of a forearm. His tentative discharge date is March 24, 2034. None of his siblings has mental or physical health concerns, and none have any substance abuse issues.

Tyrone Cameron, after entering the foster care systems with Michael and Shawnice Cameron enjoyed a "childhood", relative stability and performed volunteer work for the church and community. Apart from an act of sexual abuse by a cousin when Tyrone was 15, he lead a fairly normal life as a teenager and experienced no other physical, sexual or emotional abuse. He obtained regular employment and participated in boxing as an extra-curricular activity.

The Defendant had a year-long relationship with Renee Thompson between 2011 and 2012, but claims his arrest in 2013 lead to the breakup. Renee Thompson has a criminal conviction history

including forgery, theft, assault and driving while intoxicated. Ms. Thompson is 36 years old and lives in Des Moines at an undisclosed location. It is unknown whether or not Ms. Thompson is employed and she does not have any physical or mental health issues. From this relationship was born Tenay Unique Cameron, age nine, who lives with her mother. The Defendant has limited contact with Tenay due to his incarceration, but keeps in contact with her mother.

The Defendant met and married Jacquelyn Cameron in 2016. Jacquelyn is 41 years old and works for the United States Post Office and has previous arrests for assault, harassment and driving while barred. From this relationship two children were born: Tony Cameron, age 4, who lives with his paternal Aunt, Brittany Price, and Jayonna Marie Cameron, a one year old who lives with her mother. Tony was placed with his paternal Aunt after Jacquelyn lost custody due to continued drug use, and Tyrone had his parental rights terminated after a complaint of domestic abuse was levied against him. Jacquelyn struggles with drug use, and it was both of their drug use that led to a breakdown of the marriage. There is a no contact order in place until 2025. Jacquelyn has an 11 year old son, Santana, from a previous relationship. There is no records of divorce proceedings filed.

Tyrone left high School during his senior year, with a cumulative grade point average of 1.65 out of 4.0., because "he started getting into trouble". The Defendant obtained his GED while imprisoned by the Bureau of Prisons on July 22, 2015. He has no vocational training, but claims that he was enrolled at Post University (Waterbury, Connecticut) on-line in 2021 to take on-line business related classes through his date of arrest. No verification could be obtained.

The Defendant has always lived in the Des Moines metro, with the exception of any time spent incarcerated in the Federal Bureau of Prisons. He would like to return to the Des Moines

metro after having served his sentence. His parents are supportive of this action, and have agreed to support him and locate proper housing upon his release.

The Defendant has worked for short amounts of time at Dee Zee, from which he was fired for poor work performance, and then at fast food establishments and at a local storage facility between 2012 and 2014. From 2014 through 2016 he was employed by the Iowa Department of Corrections as a food preparation worker, and then was transferred to the Bureau of Prisons, where he continued this work. Upon his release in 2016 he worked as a tire mounter for HIS, earning $ 13.00 an hour until April of 2018, when he was again incarcerated and took up food service work. When he was again released in 2018, he joined Local Teamsters 177 Union, working in construction. After having suffered from heatstroke in 2019, he was terminated from his position with the Union. From that time, the defendant maintained thready employment through temporary agencies and worked "here and there" as directed until the end of 2021. In January 2022 the Defendant began working at Paul Wilson Enterprise as a construction laborer until lack of work and his arrest for the instant charges occurred in April of 2022.

The Defendant is healthy and suffers from no chronic physical health conditions. The Defendant was first diagnosed with adjustment disorder with mixed anxiety and depression while serving time at the Polk County Jail in 2021. He was prescribed 30 mg Remeron, but stopped taking the medication when he was released. On September 21, 2022 he was again evaluated and found suffering from adjustment disorder with mixed anxiety and depression, and also with Post Traumatic Stress Disorder (PTSD) for which he is receiving Mirtazapine 15 mg daily and Prazosin 2 mg daily. While on these medication, the Defendant is stable, but has history of forgetting doses. His non-medical coping strategies include working out, bible study classes, prayer and he "does hair" for other inmates. The Defendant denies any gambling issues.

Defendant has a history of abusing marijuana, alcohol, cocaine and has used both PCP and Methamphetamine. He has been on and out of substance abuse treatment since July 2013 for all of the substances previously listed. He would benefit from continued treatment while incarcerated.

## APPLICATION OF 3553(a) FACTORS AND MOTION FOR DOWNARD VARIANCE
## REQUESTED SENTENCE OF 60 MONTHS

By applying the requested variance and considering the applicable 3553(a) factors, the defendant, Tyron Scott Cameron, requests that he be sentenced to a term of 60 months. Such a sentence satisfies 3553(a), as it is sufficient, and not greater than necessary in a case where the district court should consider the possibility of residual doubt as to his guilt.

In addition to residual doubt as to his guilt, the court should vary downward due to his extremely chaotic childhood (PSR ¶ 61), history of foster care placement, history of sexual assault victimization (PSR ¶ 62), personal victimization of street violence (PSR ¶ 63), long history of substance and abuse of drugs by significant other (PSR ¶ 75, 89-99), significant relationship dysfunction (PSR ¶ 75-76, 39, 46, 47) and lack of stable employment and place to live (PSR ¶ 78, 107-114)

Respectfully submitted,

_____
F. MONTGOMERY BROWN  AT001209
F.M. BROWN LAW FIRM, P.L.L.C.
1001 Office Park Road, Suite 108
West Des Moines, Iowa 50265
Telephone: (515) 225-0101
Facsimile:  (515) 225-3737
hskrfan@fmbrownlaw.com
ATTORNEY FOR DEFENDANT

Original Filed.

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

CERTIFICATE OF SERVICE

I hereby certify that on 26th day of July 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Copies to:

Kristin Herrera
Asst United States Attorney
110 East Court Avenue, 2nd Floor
Des Moines, Iowa 50309
Kristin.herrera@usdoj.gov