IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA, | ) | Crim. No. 4:22-cr-157 |
|---|---|---|
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| TYRONE SCOTT CAMERON, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

## Table of Contents

INTRODUCTION ................................................................................................... 1
PROCEDURAL BACKGROUND.......................................................................... 2
OBJECTIONS .......................................................................................................... 2
    A. Objections to the Offense Conduct ............................................................. 2
    B. Other Objections .......................................................................................... 3
SENTENCING GUIDELINES................................................................................ 5
RESTITUTION AND VICTIM IMPACT .............................................................. 5
CONCLUSION........................................................................................................ 7

### INTRODUCTION

Defendant shot and killed another man and injured a bystander. He did that on the heels of other convictions for incredibly violent crimes. He is a serial gun toter. The Court should sentence him to 120 months in prison – the maximum sentence allowable by law.

1

## PROCEDURAL BACKGROUND

On October 18, 2022, a grand jury returned a one-count Indictment charging Defendant with felon in possession of ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). On April 5, 2023, following a three-day trial, a jury found Defendant guilty as charged.

There are numerous outstanding objections to the PSR, which fall into two broad categories. First, because Defendant maintains his innocence, he objects to the facts outlined in the offense conduct statement and the resulting guidelines calculations. Second, Defendant objects to other factual matters in the PSR, including the accuracy of prior convictions paragraphs and his gang affiliation.

The government does not anticipate witnesses at sentencing and relies on the evidence presented at trial. It will offer under seal Government Sentencing Exhibits 1 through 3, which have been provided to the Court and defense counsel prior to sentencing. The government anticipates at least one victim who will make an oral statement at the time of sentencing.

## OBJECTIONS

### A. Objections to the Offense Conduct

Defendant raised numerous factual issues and to the information contained in the Offense Conduct section of the PSR and the resulting guidelines. *See generally* Dkt. 89, ¶¶ 3-9. Defendant does not contend the offense conduct statement is inconsistent with the trial record, he simply disputes the credibility or strength of that evidence and maintains his factual innocence. The government relies on the

testimony and exhibits presented at trial, which established these facts by a preponderance of the evidence.

**B. Other Objections**

Defendant further objects to a number of other paragraphs of the PSR, which are addressed below:

Paragraph 47. This paragraph summarizes the facts that led to Defendant's convictions for attempted burglary, child endangerment, domestic abuse causing bodily injury, false imprisonment, and harassment. Defendant "objects to the underlying factual assertions relating to use or possession of a firearm." Dkt. 89, ¶ 0. The police report from this incident (Government Exhibit 1) and trial evidence established the following. On May 27, 2021, Defendant's estranged wife, J.C. and her 9-year-old son were at J.C.'s aunt's house (B.H.). Defendant wanted to come over but was told he could not. Defendant then came over to the house anyway and kicked in B.H.'s door. He had a gun, which he used to hit J.C. in the head. He also pointed the gun at B.H. and threatened her. Then, Defendant kidnapped J.C.'s son, taking him out of the house. The police responded to J.C.'s 911 call. While police were at the scene, J.C.'s son returned to the house, having gotten away from Defendant. While Defendant disputes he had a gun during this attack, this paragraph accurately summarizes the police report and the statements of the witnesses. It's not this Court's job to re-litigate the facts of prior convictions. Regardless, the trial evidence proved these facts by a preponderance of the evidence.

Paragraph 59. This paragraph summarizes the facts that led to Defendant's July 2020 arrest for violation of a no contact order. Specifically, Defendant objects "to the underlying factual assertions." Dkt. 89, ¶ 11. This paragraph, which documents Defendant's threat to kill J.C., accurately summarizes the witness statements contained in the police report. *See* GX 2. To the extent the Court relies on unfiled prior charges at all, it can give it the weight the Court thinks this paragraph and Government Exhibit 2 deserve.

Paragraphs 63 and 142. Defendant denies any affiliation with the C-Block criminal street gang. Dkt. 89, ¶¶ 12, 15. This information is based on the United States Probation Office's prior supervision of Defendant for a prior federal conviction, when he was the victim in a gang-related shooting. The government has also reviewed a 2014 report of interview with a Heavy Hittas criminal street gang member, who identified Defendant as affiliated with C-Block. *See* GX 3.[1] The government does not ask the Court to rely on Defendant's gang affiliation in imposing sentence, but this information should remain in the PSR for adequate supervision and classification of Defendant.

---

[1] This interview was conducted as part of the investigation and conviction detailed in paragraph 35 of the PSR, wherein Defendant and a co-conspirator broke into a female victim's house and robbed her of jewelry, marijuana, and clothing. During that same crime, the co-conspirator also sexually assaulted the victim.

# SENTENCING GUIDELINES

Based on the foregoing, the PSR correctly calculates the advisory guidelines range in this case as follows:

<u>Base Offense Level (§2K2.1(c)(1)(B), 2A1.1(a))</u>     43

Total Offense Level                                      43

Criminal History Category                                VI

Guidelines Sentencing Range:            Life imprisonment

# RESTITUTION AND VICTIM IMPACT

The government knows of at least one victim who intends to make an oral statement at the time of sentencing.

The government requests the Court order restitution in the following amounts:

| Name | Amount | Exhibit |
|---|---|---|
| Iowa Crime Victims Compensation | $7,500 (funeral expenses) | Gov. Ex. 4 |
| Carlotta Conklin | $800 (funeral expenses) | Gov. Ex. 4 |

# THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 120 MONTHS'

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). For the reasons that follow, the § 3553(a) factors support a sentence of 120 months' imprisonment.

Defendant callously and cowardly fired 15 rounds through a closed apartment door, striking and killing J.G. and injuring another. Defendant had gotten into an argument with J.G., who had embarrassed Defendant in front of his friends and girlfriend. There is never a good motive for premeditated murder, but Defendant's own ego is among the worst.

Sadly, this escalation was predictable if not preventable. Defendant has been a consistent and unmitigated danger to the community his entire adult life. In back-to-back incidents at age 18, Defendant possessed a gun. For the latter, he received a federal conviction and leniency: probation. He squandered it – revocations and modifications because he couldn't keep a job, stop using drugs, or follow the law. That kicked off his truly assaultive conduct, including repeated, brutal assaults on his estranged wife and her family members. Less than a year before he killed J.G., Defendant viciously attacked his estranged wife, held her aunt at gun point, and kidnapped her minor son.

The law only allows for 120 months. That's tragic. Defendant deserves every minute of that and more.

# CONCLUSION

The Court should impose a sentence of 120 months' imprisonment.

>Respectfully submitted,
>
>Richard D. Westphal
>United States Attorney

By: */s/ Mikaela J. Shotwell*
>Mikaela J. Shotwell
>Kristin M. Herrera
>Assistant United States Attorneys
>United States Courthouse Annex
>110 East Court Avenue, Suite 286
>Des Moines, Iowa 50309-2053
>Tel: (515) 473-9300
>Fax: (515) 473-9292
>Email: Mikaela.Shotwell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail  ____ Fax  ____ Hand Delivery

 X  ECF/Electronic filing  ___ Other means (email)

UNITED STATES ATTORNEY

By:  */s/Mikaela J. Shotwell*